LOVENDAHL, *Petitioner,*

*v.*

EMPLOYMENT DIVISION et al, *Respondents.*

(No. 76-2878 EB, CA 5845)

554 P2d 611

*David Horne,* Eugene, argued the cause and filed the brief for petitioner.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

No appearance for respondent Roseburg Lumber Co.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

This is an unemployment compensation appeal. Claimant appeals from a decision of the Employment Appeals Board and the referee, both of whom upheld the action of the Employment Division in redetermining and reversing its previous decision which had allowed benefits. Claimant contends that this action was contrary to law and not supported by substantial evidence.

The relevant facts are set out in the findings of the referee:

"* * * (1) Claimant worked for employer as a tree planter and clean up man from April 24, 1974 through March 7, 1975, closing at $4.70 an hour, and separated to plant trees on a subcontract basis. (2) Claimant worked at this about a month, earning about $7.00 an hour by planting each tree for $.07 apiece, until the contract was completed. (3) Claimant has had work experience as a mill worker, tree planter and quality control man. (4) Claimant is not qualified either by training or experience to be a carpenter other than the time and experience gained by building his own home, nor has he any experience as a tree thinner. (5) The tree planting season runs from November through April of each year. The tree thinning season is during the summer months. (6) After March, 1975, claimant became a part of a loosely organized group of tree planters and thinners whose goal and employment aspirations were to secure tree planting and thinning contracts for the seasons ahead. (7) * * * (8) Claimant was on a mailing list of prospective bidders for planting contracts and sought bid opportunities with the knowledge that the other individuals would be available if the bids were accepted. Many of the other members acted similarly. (9) Claimant, although not bonded, could have been a prime contractor on the planting contracts were they small enough so as not to require a bond. However, one of the group was bonded and any contract requiring a bond would be prevailed upon with his bond. (10) Once a contract would be secured, each would work it as a subcontractor at so much a tree. (11) Claimant would have disassociated himself from the group had he been offered employment comparable to the $7.00 an hour that

he could make subcontracting the tree planting. (12) The only skills claimant had to sell were mill hand and tree planting on an hourly basis. Claimant performed both for employer prior to March, 1975, at substantially less than $7.00 an hour. (13) As of August, 1975, claimant developed a hernia prompting him to see a physician concerning it on November 17, 1975, with the resulting restrictions of no heavy lifting, bending, or straining * * *. (14) Claimant and the others, from time to time, did bid on the available contracts but without success."

In support of his principal contention that the Division had no legal authority to reverse its prior decision, claimant argues as follows:

The Division's attempted reversal is based entirely on information which was actually in its possession at the time of the original decision (except for the medical evidence as to claimant's later discovered hernia); that a reversal in such a situation is prohibited by ORS 657.290(1).

ORS 657.290(1) provides:

"Upon his own motion or upon application of any party to a claim for benefits, the administrator may in his discretion at any time after the same was made and irrespective of whether it has become final under this chapter, reconsider any previous decision as to clerical errors and errors of computation in the claim and may, with respect to allowing or disallowing in whole or in part a claim for benefits, *enter a new decision either upon any grounds or issues not previously ruled upon or in any case where new facts not previously known to the administrator become available.*" (Emphasis supplied.)

So far as we can determine the above provision has not been previously interpreted by the appellate courts of this state.

It is our conclusion that claimant's interpretation of the above statute cannot be sustained.

■ We would agree that the emphasized language unquestionably does restrict the Division's power to reconsider its own decisions. However, this restriction

is not as broad as claimant contends. As we read the above section *in pari materia* with the remainder of the "Employment Division Law" as directed by ORS 174.010, the Division is not precluded from reopening and redetermining the issue of a claimant's eligibility (a) on grounds other than those on which the claim was originally decided, or (b) if relevant new facts are brought to its attention following an original determination of eligibility. In other words, under the above statute, once the Division makes a decision based on the general conditions of eligibility enumerated in ORS 657.155,[1] it is precluded from reversing that determination on any of those grounds. However, it is free to reconsider and make a new determination (a) on a new ground or issue or (b) on relevant new facts.

Applying the above statutes to the facts at bar, we conclude:

■ (1) That the Division, having initially determined pursuant to ORS 657.155 that claimant was "actively seeking and unable to obtain suitable work," was precluded by ORS 657.290(1) from reopening this issue. Accordingly the Division's attempted redetermination by which it sought to disqualify claimant on the ground that he had limited his search for "suitable work" by seeking only contracts for tree-planting jobs, was a nullity. ORS 657.290(1).

■■ (2) That the Division was authorized to redetermine and reverse its previous decision on a new ground,

---

[1] ORS 657.155 in pertinent part provides:

"(1) An unemployed individual shall be eligible to receive benefits with respect to any week only if the administrator finds that:

"(a) He has registered for work at and thereafter has continued to report at an employment office in accordance with such rules as the administrator may prescribe. * * *

"(b) He has made a claim for benefits with respect to such week in accordance with ORS 657.260.

"(c) He is able to work, is available for work, and is actively seeking and unable to obtain suitable work. * * *

"(d) He has been unemployed for a waiting period of one week. "* * * * *."

namely, that claimant had voluntarily resigned his previous employment with Roseburg Lumber Co. to become an independent tree-planting contractor and was therefore not "unemployed." *See,* ORS 657.100. This decision we find was supported by substantial evidence in the record.[2]

■ Next, the evidence indicates that claimant's hernia was not discovered until August 1975. The initial claim for unemployment compensation was for the period commencing March 30 through November 1, 1975.

Inasmuch as the redetermination established claimant's ineligibility *ab initio* on the above described new ground, the hernia would not be the controlling factor in the redetermination, even though it contributed to claimant's unavailability from the date of its occurrence for the remainder of the period in issue.

Accordingly the Division was entitled to charge claimant's account for the benefits erroneously paid.

Affirmed.

---

[2] In addition, although not listed in the referee's decision as a ground for denying benefits to claimant, it would appear that claimant would also be disqualified under ORS 657.176(2)(c) because he had voluntarily left his previous employment with Roseburg Lumber Co. "without good cause." This section provides:

"(2) If the authorized representative designated by the administrator finds:

"* * * * *

"(c) The individual voluntarily left work without good cause * * *