Stephen Grcich, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Corning Glass Works, Respondents.

Argued December 8, 1980, before Judges MENCER, BLATT and MACPHAIL, sitting as a panel of three.

*Charles Skomski,* for petitioner.

*Karen Durkin,* Assistant Attorney General, with her *John E. Costello,* Assistant Attorney General, *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for respondents.

OPINION BY JUDGE MENCER, March 23, 1981:

Stephen Grcich (claimant) has appealed from an order of the Unemployment Compensation Board of Review (Board) which denied benefits for willful misconduct pursuant to Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

Claimant had been employed as a floor worker by Corning Glass Works (employer) for a period of five years, when he was discharged for allegedly refusing to perform his assigned duties as requested by his supervisor and using profane language in response to her directions. The Bureau (now Office) of Employment Security issued a determination denying benefits to claimant for willful misconduct. Claimant appealed, and the referee issued a decision on March 3, 1978 reversing the Bureau and granting benefits. The employer appealed the referee's decision to the Board. The Board remanded the case for the purpose of taking additional testimony. After reviewing this

testimony, the Board affirmed the referee's decision on January 25, 1979 and made the following relevant findings of fact:

2. The claimant was discharged for alleged violation of company rules against insubordination and using abusive language. Involved therein are two incidents on December 23 and 30, 1977 when the claimant is alleged to have refused to perform assigned duties when instructed to do so by a supervisor and to have used abusive language to the supervisors in question.

3. On December 23, 1977 the claimant's supervisor grabbed him by the arm and told him to do certain clean-up work.

4. The aforementioned incident occurred after the claimant's scheduled quitting time and the claimant informed the supervisor that he was leaving as he was on his own time.

5. The claimant was performing duties as a sealer and the clean-up work in question was not part of his job duties.

6. The claimant did not holler at his supervisor.

7. The incident between a supervisor and the claimant which is alleged to have occurred on December 30, 1977 did not, in fact, occur.

The employer petitioned the Board for reconsideration of its January 25, 1979 decision. The Board granted this request and vacated its prior order. Without taking additional testimony, the Board issued a decision on May 16, 1979 denying benefits to claimant. The Board submitted the following findings of fact in support of its decision:

2. As a general rule, employees ... were required to wear safety glasses while working.

3. In November, 1973, the general foreman of the claimant's department discovered the claimant working without wearing his safety glasses.

4. As a result of discovering the claimant working without wearing his safety glasses, the claimant's general foreman cited the claimant for a safety violation.

5. When the claimant was apprised by the general foreman that he was being cited for a safety violation, the claimant threatened the foreman with physical harm.

6. On February 26, 1976 the claimant's shift supervisor instructed the claimant to clean up his work area. The claimant refused to do so.

7. Later, during the same shift, the claimant's shift supervisor again directed the claimant to clean up his work area. In response to the foregoing order, the claimant threatened the shift supervisor with physical harm.

8. On December 23, 1977 the claimant worked the 3:00 p.m. to 11:00 p.m. shift.

9. Employees who worked the 3:00 p.m. to 11:00 p.m. shift quit working at 10:45 p.m. and punched out at 10:50 p.m.

10. At approximately 10:30 p.m. on December 23, 1977 the claimant's shift supervisor directed the claimant to clean up his work area. The claimant refused to do so and responded to the order in a profane manner.

11. As a result of the foregoing incident, the claimant's shift supervisor recorded details of the incident and placed the report in the claimant's personnel file.

12. On December 30, 1977 the claimant worked the 11:00 p.m. to 7:00 a.m. shift.

13. During the course of the 11:00 p.m. to 7:00 a.m. shift, the claimant's shift supervisor directed him to clean up his work area. The claimant refused to do so, and responded in a profane manner.

14. Again the claimant's shift supervisor recorded the details of the incident and placed the report in the claimant's personnel file. Additionally, the shift supervisor brought the claimant's conduct on both December 23, 1977 and December 30, 1977 to the attention of the claimant's section supervisor.

15. The claimant was discharged on January 4, 1978 for his record of insubordination, threatening supervisors, and directing profane language at supervisory personnel.

Claimant argues that the Board was improperly influenced by the conduct of the employer and his attorney, particularly in its decision to grant reconsideration. In support of his argument, claimant points to two letters written in response to the Board's decision of January 25, 1979. In the first letter, the employer's attorney requests reconsideration of the case, alleging, *inter alia* that (1) "the findings completely ignore the testimony of every witness except [claimant]" and (2) "the person who took the testimony, Mr. Stonage, was a high school classmate of Mr. Skomski, counsel for [claimant], and ... Mr. Stonage's mother was a former employee (hourly rate) of [the employer] and a union member." In the second letter, the employer's representative alleges that the testimony in the record was not reviewed by the individual Board members and indicates that he may notify the Governor of this situation. These letters are the only additional factual elements contained in the record after the Board's decision of January 25, 1979.

Approximately two weeks after the receipt of the letters, the Board issued an order granting the employer's request for reconsideration. The Board, however, did not state in either this order or the subsequent decision denying benefits the basis upon which it granted reconsideration. In *Flanagan v. Unemployment Compensation Board of Review*, 47 Pa. Commonwealth Ct. 120, 123-24, 407 A.2d 471, 473 (1979), we stated that "before the Board agrees to reconsider its own decision there must appear of record some reason to support this exercise of discretion." We believe that allegations unsubstantiated by any evidence of record cannot support a decision of the Board to reopen a case, particularly where the appellant has not been given the opportunity to refute such allegation.[1]

This position is supported by the regulation of the Board at 34 Pa. Code §101.111(b), which provides:

(b) Such requests [for reconsideration] will be granted only for *good cause* in the interest of justice without prejudice to any party. The parties will be notified of the ruling of the Board on each such request. The request for reconsideration and the ruling of the Board

---

[1] Other jurisdictions have adopted similar guidelines when reviewing the determination of an unemployment compensation authority to reopen its prior decision. *See, e.g., Olan v. Ross*, 60 App. Div.2d 113, 400 N.Y.S.2d 379 (1977), where the court stated that, in the interest of fairness and due process, the "notice of reopening" must include the specific points to be reconsidered so that appellant might address those points in any written statements, documents, or briefs submitted to the Board, and *Lovendahl v. Employment Division*, 26 Or. App. 665, 554 P.2d 611 (1976), where the court ruled that the unemployment compensation authority may, by statute, reopen and redetermine claimant's eligibility only (a) on grounds other than those on which the claim was originally decided, or (b) if relevant new facts are brought to its attention following an original determination of eligibility.

shall be made a part of the record and subject to review in connection with any further appeal to the Commonwealth Court. (Emphasis added.)

Certainly, we cannot ascertain whether the Board abused its discretion or lacked good cause for its ruling, unless the reason for granting reconsideration appears in the record.[2] In the instant case, it is possible that the Board legitimately reopened the case because of bias on the part of the referee or a defect in the decision-making process. It is equally possible that the Board abused its discretion by granting reconsideration of its initial decision, which was supported by substantial evidence in the record, or that the Board was improperly influenced by the conduct of the employer and his attorney.

Therefore, we hold that the Board must clearly set forth in the record the basis upon which it grants reconsideration of its decision, in order that we may properly exercise our appellate role to oversee abuses of discretion. We will remand this case to the Board for the specific purpose of allowing the record to reflect the reason for reopening the decision of January 25, 1979.

Accordingly, we enter the following

ORDER

AND Now, this 23rd day of March, 1981, the order of the Unemployment Compensation Board of Review,

---

[2] Cf. Baird v. Unemployment Compensation Board of Review, 30 Pa. Commonwealth Ct. 118, 372 A.2d 1254 (1977), where we ruled that the Board had good cause for granting reconsideration, since the employer's request stated that it did not receive notice of the referee's hearing until the day after the hearing was conducted. We note that in Baird the reason for granting reconsideration was clear from the face of the record, since the employer argued only that he had received inadequate notice.

dated May 16, 1979, denying benefits to Stephen Grcich, is remanded to the Unemployment Compensation Board of Review for the purpose of setting forth the basis upon which reconsideration of the decision of January 25, 1979 was granted.

This decision was reached prior to the expiration of the term of office of Judge Wilkinson.